KERSEY, Executor, etc., v. O'DAY, Guardian and Curator, etc.; JUMP, Interpleader and Appellant.

Division Two, March 31, 1903.

1. **Attorney's Fee:** LIEN ON JUDGMENT: INTERPLEA. In a suit by an attorney against a client to have his contract of employment upon a contingent fee established, another attorney who was employed by him to assist him and put up money to enable him to prosecute the cause to a successful issue, under a definite agreement with him as to what his compensation should be, can not come in by interplea and have his claim against such other attorney established and his judgment paid out of the sum decreed to the attorney prosecuting the suit. Such interpleader's claim is not a lien on the estate of the client. It is purely a claim against his associate, hence his interplea should be dismissed.

2. ———: CONVERSATIONS OF CLAIMANT: CONTRADICTION. One who is prosecuting a claim against an administrator is not competent to contradict or explain conversations concerning such claim had by him with witnesses prior to the probate of the will or grant of letters. Such witnesses may testify as to what the claimant said in such conversations but the statute excludes him from testifying for the purpose of contradicting them.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*Heffernan & Heffernan* for appellant.

The interpleader was a competent witness, in his own behalf, to refute the alleged conversations, that he claimed he had with witnesses Powell, Ben Kersey, Delaney and Watson, alleged to have taken place since the death of Thomas W. Kersey. Cases at common law, "*ex necessitate rei,*" and is therefore competent under the statute. 1 Greenleaf on Evidence, sec. 348, p. 461, note 1; Angel v. Hester, 64 Mo. 144; Fish v. Hoy, 42 Mo. App. 295; Wade v. Hardy, 75 Mo. 400; Poe v. Donic, 54 Mo. 123; Martin v. Jones, 59 Mo. 181; Deeper v. Taylor, 111 Mo. 312; Hayden v. Parson, 70 Mo. App. 498; James v. Hicks, 58 Mo. App. 526. It was not intended by the statutes to exclude one party, the other being dead, where the evidence related to transactions had with third persons, to which the deceased was no party, and of which he had no knowledge, or where the evidence referred to transactions which had taken place since the other party in interest departed this life. Martin v. Jones, 59 Mo. 181; Nugent v. Curran, 77 Mo. 326; Bank v. Payne, 111 Mo. 299; James v. Hicks, 58 Mo. App. 526; Hayden v. Parsons, 70 Mo. App. 498. This

being an equity case, this court is not bound by the findings of the trial court.

*E. W. Banister* for respondents.

(1) The court did not commit error in excluding the testimony of the interpleader. Sec. 4652, R. S. 1899; Leeper v. Taylor, 111 Mo. 323; Curd v. Brown, 148 Mo. 95. (2) The interplea does not state, nor the evidence establish, such a case as entitles interpleader to a decree. In this State it has always been held that an attorney has no lien on the judgment or fund secured through his effort unless it is in his hands. Frissell v. Haile, 18 Mo. 18; Alexander v. Railroad, 54 Mo. App. 73; Jones on Liens, sec. 163. Here Kersey brings suit for his reasonable compensation against the curator of the minor, and Jump, claiming to have made a verbal contract with Kersey entitling him to a part of the latter's fee, interpleads and seeks to charge the estate of the minor, which is not in the custody of the court in which the suit is brought, but in charge of a guardian and curator appointed by and subject to the control of another and different court, with a claim for a fixed sum without regard to its reasonableness. Under such circumstances the circuit court did not have authority to try the interplea. Olds v. Tucker, 35 Ohio St. 581. (3) The burden was on interpleader, under the pleadings, to establish by a preponderance of the evidence that Kersey agreed to pay him $2,500 in cash, and loan him $7,500 for ten years without interest. He failed to do this; so that, even if the court could properly entertain the interplea, the interpleader is not entitled to a decree in his favor.

FOX, J.—On August 18, 1896, Benjamin Kersey, as executor of Thomas W. Kersey, deceased, and R. M. Roper instituted suit in the circuit court of Greene county, Missouri, against John O'Day, as

guardian and curator of Marie Bunel, a minor, and Marie Bunel, S. H. Horine and E. Y. McClendon, to recover attorney's fees claimed to be due them in recovering an estate for the minors. At the May term, 1898, of said court John W. Jump, appellant herein, by leave, filed an interplea in said cause.

The interplea, in brief, averred that plaintiff Kersey was executor of Thomas W. Kersey and in charge of his estate; that John O'Day was guardian and curator of Marie Bunel and in charge of her estate; that one Dames Napoleon Bunel, the grandfather of the minor, died intestate in France in 1887, leaving a large estate valued at about $500,000, of which the minor inherited about $130,000. That the minor lived with her mother in Arkansas, in ignorance of or indifference to the estate until, in 1889, the plaintiff Roper advised her of the matter, when the mother employed Thomas W. Kersey to recover the estate of the minor, and Kersey and Roper agreed between themselves that they would procure the requisite testimony and take the necessary steps to recover for the minor her estate. That they caused the probate court of Greene county to appoint S. H. Horine, guardian and curator for the minor and he qualified as such. That, in January, 1890, the New York Life Insurance and Trust Company instituted suit in the Supreme Court of New York against all persons interested in the Bunel estate to have determined the question of the legitimacy of the minor, Marie Bunel, and her right to share in the trust estate held by the plaintiff in said suit under a declaration of trust executed by said Dames Napoleon Bunel, and which trust estate amounted to about $200,000. That said suit was pending about four years, during all of which time said Kersey and Roper devoted to it all their time and attention in working up said case, taking depositions and preparing the same for trial, and in so doing they expended a large sum of

money. That in said suit there was a decree, on November 23, 1893, from which no appeal was prosecuted, finding that said minor was the granddaughter of said Dames Napoleon Bunel and entitled to a one-fourth interest in his estate. That the services of said Roper and Kersey were rendered pursuant to contract made with said S. H. Horine, guardian and curator of the said minor; this contract was verbal in the first place, but afterward was reduced to writing and was sanctioned and authorized by an order of the probate court of Greene county.

The contract and order of probate court are set out in full in the interpleading petition, and from the contract it appears that, in addition to the trust estate of said Dames Napoleon Bunel in the hands of the New York Life Insurance and Trust Company, there was an estate in France. That said Kersey was to receive one-half of all sums recovered by him for the minor and was to pay all attorneys employed by him out of his share. After making these statements, the interpleader recites that said Thomas W. Kersey was insolvent and unable to pay the expense of taking depositions, traveling or the employment of counsel to further prosecute the collection of money due the minor in France, and about to give up the further prosecution of that claim when he entered into a verbal contract with the interpleader "that he and said Jump should enter into a law partnership, and move from Springfield to Louisiana, Missouri, the former home of said Jump, that he might give bond as curator and guardian of said Marie Bunel. . . . By the terms of said verbal contract, the said John W. Jump was to have an interest in the money the said Kersey collected for Marie Bunel in France; that is to say, the said Jump was to have $10,000 in the following way: $2,500 cash, and the use of $7,500 for ten years without interest."

It is unnecessary to set out in detail all the testimony introduced in the trial, upon appellant's interplea; it is sufficient to determine the disputed questions to simply say that there was testimony tending to establish the contract alleged in the interplea between the interpleader and Thomas W. Kersey, now deceased, and also testimony tending to show that there was no such contract.

The cause was submitted to the court upon the evidence introduced and its findings are fully indicated by the decree rendered, which is as follows:

"Now at this day comes on to be heard the above-entitled cause and all the parties announcing ready for trial; the court sitting as a chancellor, heard all the evidence offered by the respective parties plaintiff and defendant, and at the close of the main suit and before he made his findings he heard all the testimony offered by the interpleader, John W. Jump, as well as the testimony offered by Benjamin Kersey, executor of the last will of Thomas W. Kersey, deceased, in defense of the claim of said interpleader, of an interest in the fund collected by the defendant John O'Day, guardian and curator of Marie Bunel in the French estate, in France, whereon, the said John W. Jump, the interpleader, claimed the sum of ten thousand dollars due him as attorney's fees and for money paid out and expended by said Jump in the securing said fund by judgment and decree in France for said Marie Bunel, defendant. After hearing all the testimony in the case, the court found, in addition to the former advances made to the plaintiffs, that R. M. Roper is entitled to fourteen thousand, two hundred and fifty dollars; Benjamin Kersey, executor of the last will of Thomas W. Kersey, deceased, the sum of twelve-thousand dollars; and the defendant, E. Y. McClendon, the sum of seven hundred and fifty dollars, twenty-four thousand dollars of which is to be drawn from the New York part of the estate

of said Mary Bunel, and three thousand dollars from the French estate. John O'Day, having paid the said Thomas W. Kersey, now deceased, the sum of five hundred and seventy dollars, on his services rendered in prosecuting the claim to judgment in France, the further sum of three thousand dollars is herein allowed him, making in all three thousand seven hundred and seventy dollars allowed said Thomas W. Kersey as an attorney for prosecuting said French claim, which amount is hereby charged against the fund." And the court so decreed. "The court further finds that John W. Jump has no interest or claim in the French fund allowed to Benjamin Kersey as claimed in said interplea filed herein. Wherefore the court dismisses said interplea filed herein by said John W. Jump, and he is herein adjudged to pay the cost of same." To the rendering of said decree the interpleader at the time duly excepted.

It will be observed that the interpleader in this cause bases his cause of action upon an alleged verbal contract with Thomas W. Kersey, for services performed and money expended in the prosecution of a certain claim in France of Marie Bunel, a minor, and this interplea was filed, doubtless, upon the theory that this claim was a lien upon the fund so recovered by said Kersey for said minor. It will be further noted that this proceeding in behalf of the interpleader, is an effort to have the court, in an action by the executor of Thomas W. Kersey to charge the minor's estate with the compensation for his legal services, adjust a claim that the appellant avers exists in his favor against the estate of Thomas W. Kersey. In effect, it is claimed by this interplea that the circuit court had the right and power to charge a fund, the administration of which is in the probate court, with the payment of the interpleader's claim, not against the minor's estate, but against the estate of Thomas W. Kersey. It must be remembered that

this claim is not enforcible against the estate of the minor; but is based upon a contract with Thomas W. Kersey in his lifetime. The contract of Kersey, spread upon the record of the probate court, clearly expresses that he was to pay any additional counsel employed to aid in the prosecution of the minor's claim in France, and of this contract appellant had due notice.

Counsel for appellant in their brief do not discuss this phase of the case; they make no reference to the proposition as to the power or right of the court to entertain this interplea in this proceeding.

Doubtless the theory upon which the interplea is predicated is, that the claim of appellant as an attorney in securing this fund for the minor, is a lien upon such fund. If we are correct in assuming that this interplea is based upon the contention that the appellant has a lien upon the fund he aided in securing, we will say that this, in our opinion, is a mistaken conception of the law upon that subject in this State. Judge SCOTT, many years ago, settled this question.

In the case of Frissell v. Haile, 18 Mo. 18, he says: "Attorneys and counselors at law in Missouri are not to be confounded with the mere attorney and solicitor in England. These last are recognized officers of the court, and are entitled to fees for the services performed by them in the same manner as the clerks of our courts of record. Their fees are ascertained and fixed by rules of court, and are recognized in the taxation of the costs of a suit. Such being their foundation, the law confers a lien on papers and on judgments to secure their payment, and will not suffer collusive compromises between the parties to a suit, made with a view to prevent their recovery. Attorneys at law, in our courts, are allowed no fees which are taxed as costs. They look to contracts made with their clients for remuneration for their services. If they receive the money of those who employ them,

they may retain their fees, just as any other bailee may retain for services rendered in the care of the subject of the bailment. Hence, the learning in the English books, in relation to the liens of attorneys, has no application, or an extremely limited one, under our system of laws."

To the same effect is the case of Alexander v. Railroad, 54 Mo. App. 73. The learned judge there very appropriately says: "That an attorney has no lien for his services on a judgment obtained by him, was long since determined in this State. [Frissell v. Haile, 18 Mo. 18; Roberts v. Nelson, 22 Mo. App. 28.] And it could scarcely be pretended that an attorney, merely as such, would have a lien on the claim before it became a judgment, in the absence of a statute conferring such a lien, as the attorney can have no lien on the suit."

The claim of interpleader is simply one against the estate of Thomas W. Kersey, based upon a contract. His action upon this claim is purely an action at law, and it can not, by filing this interplea asking the court to distribute a fund, be converted into an equitable action. His claim for legal services is of no higher order than that of any other creditor against the estate of Kersey. His remedy is not against the estate of the minor. His claim, according to the allegations in the interplea, is not based upon any contract with the minor or the guardian of the minor, hence, he must seek his remedy in the usual way pursued by creditors against the person or estate with whom he contracted.

There was no error in the action of the trial court in dismissing the interplea filed in this cause.

The conclusions reached upon the main question as herein expressed, renders it unnecessary to discuss the contention as to the exclusion of testimony by the court, upon the trial of this cause. However, as counsel for appellant has relied exclusively, in

his brief, upon this contention, we will briefly con-
sider the questions involved in it.

It is disclosed by the record that during the
progress of the trial, upon the question as to the ex-
istence of the contract alleged in the interplea, cer-
tain witnesses testified as to conversations had with
appellant, which tended to prove that he had no claim
against T. W. Kersey. In rebuttal of this testimony,
counsel for appellant introduced the interpleader for
the purpose of testifying as to the conversations
mentioned by the other witnesses. Upon the objec-
tion of plaintiff the court excluded his testimony.
Doubtless this objection was sustained by reason of
the provisions of section 4652, Revised Statutes 1899
(which is identical with sec. 8918, R. S. 1889), which
provides: "Where an executor or administrator is
a party, the other party shall not be admitted to tes-
tify in his own favor, unless the contract in issue
was originally made with a person who is living and
competent to testify, except as to such acts and con-
tracts as have been done or made since the probate
of the will or the appointment of the administrator."

The conversations testified to by the witnesses,
for plaintiff were had prior to the probate of the will
and the grant of letters testamentary, except as to a
conversation with Powell, which occurred after the
estate of Kersey went into the hands of the executor.
The evident purpose of section 4652, supra, was to
place the parties to the action on equal footing in the
trial of causes. If either of the parties were dead,
then the living party to the action was incompetent
to testify. This statute has been very strictly con-
strued by this court, and while there is a very strong
line of reasoning opposed to this construction, it still
remains the settled law of this State. The statute
which excludes the living party "except as to acts
done or contracts made since the probate of the will
or the grant of letters" has been applied to conver-

sations as in this case, had by witnesses with the living party, prior to the probate of the will. Speaking for myself, it is difficult to see the reason of this strict rule. What difference does it make, whether the conversation was before or after the grant of letters of administration? The dead man is no party to the conversations. All the persons engaged in the conversations are living. Some of them are permitted to testify to the conversations; but the living party to the suit is excluded, because the opposing party to the suit is dead. If he had been living and was not present at the conversation, he would not be able to say anything about it. It strikes me as to these conversations, separate and independent from any transaction with the deceased, to permit the living witnesses to give their version of the conversation and then exclude the living party from giving his, is directly in conflict with the spirit of the statute, of placing all parties on an equal footing. The party to the suit must remain silent, and living witnesses can testify that he made certain statements and he is not permitted even to deny their statements. If the deceased was present at the time of these conversations, I could see the reason of the rule.

However, this court has settled that question. In the case of Leeper v. Taylor, 111 Mo. l. c. 323, after quoting the statute referred to, the court, speaking through BLACK, J., says:

"But, it seems, he and his sister, Mrs. Patterson, and some of his brothers had a meeting on March 22, 1888, for the purpose of settling their mother's estate. . . . This meeting was held a month or thereabouts before the plaintiff took charge of the estate. At that meeting Mr. Patterson and some of the other persons present insisted that defendant should account for the rental value of the land; and they testified on the trial of this case as to what defendant then said concerning the declaration of trust. The claim

now is that defendant should have been allowed to give his version of what he said on that occasion. The case of Wade v. Hardy, 75 Mo. 394, holds that a defendant, when sued by an administrator, may testify as to conversations attributed to him by the administrator or by third persons, after the grant of letters of administration. That case is not in point. The statute excludes the living party, except as to acts done, or contracts made since the probate of the will or grant of the letters of administration. Here the conversations were had before letters were granted. The statute is plain enough, and should be followed."

In Curd v. Brown, 148 Mo. 1. c. 95, the court says:

"The plaintiff was not a competent witness in this case for any purpose. The circuit court permitted him to testify on the theory that he was competent to deny the statements attributed to him by the living witnesses in Virginia. In this respect the court committed error. Section 8918, Revised Statutes 1889, leaves him where he would have been at common law, incompetent for any purpose, because the other party to the contract was dead." Citing cases.

To the same effect is the case of Teats v. Flanders, 118 Mo. 660; Ring v. Jamison, 66 Mo. 424; Wood v. Matthews, 73 Mo. 1. c. 482.

If the rule announced in these cases is to control, then there was no error committed by the court, in the exclusion of the interpleader as a witness, in reference to the conversations, with those witnesses, prior to the probate of the will.

Entertaining the views as herein expressed, the judgment of the trial court will be affirmed. All concur.