FRANK SCHWALBERT, ADMINISTRATOR OF THE ESTATE OF WILLIAM SCHWALBERT, DECEASED, APPELLANT, v. BENJAMIN KONERT AND ANNA KONERT, HIS WIFE, RESPONDENTS.—76 S. W. (2d) 445.

St. Louis Court of Appeals. Opinion filed December 4, 1934.

*R. E. Kleinschmidt* for appellant.

*Terry, Terry & Terry* for defendants.

McCULLEN, J.—This is a suit for money had and received. It was brought by appellant, hereinafter called plaintiff, as administrator of the estate of William Schwalbert, deceased, against respondents, hereinafter referred to as defendants, to recover the sum of $1000, alleged to have been received by defendants as a loan on February 12, 1932, from the deceased. A trial before the court and a jury resulted in a verdict and judgment for defendants. Plaintiff appeals.

Plaintiff's petition alleged that William Schwalbert, deceased, on or about February 12, 1932, agreed to lend to defendants, and they agreed to borrow from him, the sum of $1000, with interest from

said date at the rate of six per cent per annum; that in accordance with said agreement a promissory note was prepared on the date named, in the amount mentioned, payable to the deceased one year after date, with interest as above stated; that thereupon deceased paid defendant the sum of $1000 on the agreement of defendants to repay deceased said sum and that defendants were to procure the signature of one Henry Konert as surety on said note which was to be signed by defendants as makers thereof.

The petition further alleged that the note was never delivered to the deceased but was left in the hands of defendants for the reason that before the signature of the surety mentioned could be obtained, the deceased disappeared from his usual place of abode and died on or about February 12, 1932.

It was also alleged that plaintiff as administrator made demand upon defendants for the sum mentioned and also for the delivery of said note, but that defendants refused to pay and refused to deliver the note.

The answer of defendants contained three counts. The first count alleged that William Schwalbert, deceased, was the stepfather of defendant Anna Konert, and that at the time of the marriage of said deceased to said defendant's mother there was an agreement between the mother of said defendant and the deceased that he would give defendant Anna Konert not less than $1000 if Anna Konert would live with him in his home and treat him as his children treated him; that said Anna Konert during all of the time that she remained in the home of said deceased worked faithfully and diligently, was kind and affectionate to him, helped to do the house work, and in all respects performed her part of said agreement; that on February 12, 1932, the deceased, in performance of his part of said agreement, gave the defendants $1000, which was the amount he owed the said Anna Konert for the services rendered by her.

The second count of the answer, after pleading the relationship of the parties, the agreement and the services rendered by defendant Anna Konert, as shown in the first count, alleged that the deceased gave defendants $1000 because of the services of said Anna Konert to him and because of love and affection between them. The third count of the answer pleaded a gift causa mortis.

The reply of plaintiff denied each and every allegation of new matter contained in the answer.

Plaintiff urges a reversal of the judgment herein on the ground that the court erred in refusing to give a peremptory instruction directing a verdict for plaintiff, which he requested at the conclusion of all the evidence. A proper consideration of this point makes it necessary for us to review the evidence.

The evidence disclosed that William Schwalbert, the deceased, at the time of his death was about seventy-three years of age, and had

been a widower for many years. He had seven children by his first wife. Defendant Mrs. Anna Konert was the daughter of his second wife who had six other children by a former husband. For a number of years prior to the death of deceased, he had been living on his farm with his son John to whom he had deeded the farm on condition that John pay $5000 to his father's estate after the father's death. Defendant Anna Konert lived on the farm of the deceased along with the other children and stepchildren until her marriage to defendant Benjamin Konert about twenty years before the trial of this case. The evidence showed that the deceased treated defendant Anna Konert the same as he treated his own children while she remained on the farm; that at the time the deceased married the mother of defendant Anna Konert, Anna was about eight years old. She was one of the youngest of the children and stepchildren and remained on the farm after some of the other children had gone, and there appears to be no doubt that the deceased thought a great deal of her; that she visited him after her marriage and that he visited her and her husband.

With respect to the transaction out of which this suit arises, Louis J. Roesch, cashier of the Bank of Maxville where deceased did his banking business, testified on behalf of plaintiff that on February 11, 1932, the deceased came to the bank and said he had an appointment with defendant Ben Konert to meet him there; that Ben Konert did not appear at the bank that day, but did come in on the following day along with his wife, defendant Anna Konert. The deceased was in the bank at that time. The witness waited on the deceased, who took out a certificate of deposit for $1000 which he had in the bank and said he wanted to turn $1000 over to Mr. Konert. Either Mr. Konert or the deceased instructed the witness to prepare a note. The witness could not remember which one gave him such instructions. A note for $1000 was prepared by the witness and was dated February 12, 1932. The witness could not remember whether or not it drew interest and could not recall for what length of time it was to run. Defendant Ben Konert signed the note, after which defendant Anna Konert, his wife, signed it. Mr. Konert asked the deceased if he wanted the "old man" (referring to Mr. Konert's father) to sign the note. Witness did not pay attention to the answer deceased gave to Mr. Konert's question. After Mr. and Mrs. Konert had signed the note they and the deceased stepped aside out of the hearing of the witness and engaged in conversation amongst themselves. The witness further testified that shortly thereafter he stepped over to the window where the deceased and Mr. and Mrs. Konert were conversing and that Mr. Konert had the note which he offered to the deceased saying: "Well, you take this Pap," and that the deceased said: "No, you take that along, and when I want

it, I will call for it, or I will get it.'' The deceased left the bank, telling the witness that he was going to a hospital in St. Louis to see his brother-in-law.

It appears from the undisputed evidence that the deceased went from the bank and did visit his brother-in-law at a hospital in St. Louis; that he arrived at the hospital at about four o'clock in the afternoon of the same day, namely February 12, 1932, and left the hospital after a short visit with his brother-in-law. Upon his failure to return to his home that evening, some of his children instituted a search for him but they were unable to find him. About six or seven weeks thereafter his body was found. It appears to be conceded that he had committed suicide.

Plaintiff Frank Schwalbert, a son of the deceased and administrator of his estate, testified that he was appointed administrator on April 11, 1932, and shortly thereafter he asked the Konerts if they had any of the papers of deceased and they said they didn't have any such papers; that later on he asked Ben Konert for the note; that Ben Konert called him to one side and said: ''I have got that note,'' and also said: ''We can't have any trouble about it;'' that later on Ben Konert said: ''I am going to hold on to it until I have to give it up.'' The witness gave further testimony to the effect that Ben Konert told him after witness' appointment as administrator that he, Konert, had received a thousand dollars from the deceased; that Konert did not tell him that the deceased had made him a gift of that amount, but that when the witness asked him about it, Konert immediately said: ''I am going to hold on to it;'' that Konert also declared that the thousand dollars was a part of Konert's wife's share in the estate of the deceased.

Mrs. Ida Becker, a witness for plaintiff, testified that she was related by marriage to defendant Anna Konert and plaintiff Frank Schwalbert, administrator, and that she saw Anna and Ben Konert on the morning that deceased was buried, which was sometime in the latter part of March, 1932; that Anna Konert said to the witness on that occasion: ''I was surprised that Bill Schwalbert would do such a thing, . . . and if I had known anything like this was going to happen I never would have borrowed a thousand dollars from him.''

Steve G. Blum, a farmer living at Breezy Heights, testified for plaintiff that he had a conversation with defendants after the disappearance of the deceased, and that Mrs. Konert said she was sorry they had ''borrowed that thousand dollars.'' The witness gave further testimony to the effect that Mrs. Konert in the same conversation said something about the lumber they had used in connection with the building of their house having cost more than they thought it would; that Mrs. Konert did not on that occasion say anything

about the deceased giving her any money but that she used the word "borrowed."

Jacob Haefner, a farmer and son-in-law of the deceased, testified for plaintiff that on Saturday night, February 13, 1932, after the deceased did not return to his home, he and others made a search for him and in that connection went to the home of Ben Konert, having heard that Mr. Konert had some kind of a deal at the bank with deceased; that the wife of the witness in his presence and in the presence of witness Steve Blum asked Mr. Konert if he and Mrs. Konert had had some dealings with the deceased and that both answered that they had borrowed some money from the deceased; that the Konert's referred to the house they had built and how much they had to borrow. The witness further testified that on the next day, Sunday, February 14th, Mr. and Mrs. Konert came to his house and said they "were going to tell us the facts," and in the same conversation told the witness they had "borrowed a thousand dollars;" that Mr. Konert had a note which he declared that "Pap" (meaning the deceased) had said he would call for within two or three days. The witness testified that at the time of the last mentioned conversation with the Konerts, no one was really certain of the death of the deceased and he was not actually known to be dead until the latter part of March, 1932.

On cross-examination this witness was asked: "Q. Do you know if they used the term 'borrow' at that time?" To which he answered: "Yes, sir." On further cross-examination of this witness, the following occurred:

"Q. Isn't it a fact that they said 'all we know is that we were up there at the bank and we got a thousand dollars from him?' A. They said they borrowed it."

Mrs. Irene Haefner, a daughter of the deceased and step-sister of defendant Anna Konert, gave testimony substantially the same as that of witness Jacob Haefner with respect to conversations with defendants on the night of February 13, 1932, and the next day wherein the defendants made statements that they had borrowed the thousand dollars in question from the deceased.

Clara Ehlers, another daughter of the deceased, also gave testimony to the effect that on the 15th of February, 1932, while they were all searching for the deceased, Anna Konert came to the witness crying and said: "I am sorry we borrowed that money."

Otto Hooge, a witness for defendants, testified that he knew the deceased and Anna Konert for about thirty years; that during the time Anna Konert lived on the farm with deceased, she helped around the house and in the field, and did hoeing as well as other work of that general nature; that in a conversation with the deceased, about eight or ten years prior to the trial, deceased said that when he

married Anna's mother Anna was about six or seven years old and that whenever she got married he was going to treat her the same as the rest of the children; that he was going to give her her share; that the deceased didn't mention what kind of a share nor did he mention any amount.

Henry Schoen, a witness for defendants, testified that in the first part of July, 1923, he talked to the deceased concerning what the deceased was going to do for defendant Anna Konert in his will, and that. the deceased said: "Konert's wife is going to get some more money, she stayed with me a long time and done work for me."

Elmer Koehler, assistant cashier in the Bank of Maxville, testified on behalf of defendants to the effect that he was in the bank on February 12, 1932, and saw the transaction between the deceased and Mr. and Mrs. Konert there that day. He testified as follows:

"Q. Did you see Mr. Konert offer Mr. Schwalbert any note? A. Yes, sir.

"Q. What did Mr. Schwalbert do? A. He refused the note and said he didn't want it.

"Q. Where was that? A. That was in the lobby of the bank.

"Q. Was that nearer your window than it was Mr. Roesch's window? A. Yes, sir."

Further on in the testimony of this witness, the following occurred:

"Q. When Ben Konert offered Judge Schwalbert the note, did he say 'Keep it, I will call for it when I want it?' A. No, sir.

"Q. What did he say? A. He said he didn't want it."

William Christ testified that he knew defendant Anna Konert throughout her life; that she worked for the deceased at his home and in the field and that on an occasion about eight or ten years prior to the trial, the deceased said to the witness: "That girl has earned something;" that on two or three occasions the deceased told him he was going to give that girl a thousand dollars out of his estate because she was a good girl, stayed at home and worked hard. The witness further testified that about four days before the deceased left, he and the deceased had a conversation at the witness' residence; that the deceased said he was going up to the bank and get some money that was in the bank and give it to Mrs. Konert. At one point in his testimony this witness said that the deceased told him he was going to make Konert and his wife a present of a thousand dollars, but later on he was asked: "He didn't say he was going to make a present?" and answered: "No."

Anna Steinberg gave testimony to the effect that about twenty years prior to the trial, deceased, referring to defendant Anna Konert, whose maiden name was Anna Reiser, said: "She is a very good girl" and some day I am going to give her something;" that on the same occasion the deceased said, referring to Anna: "She works her just

like a servant, she goes out in the field and picks berries. . . . If it wasn't for Anna lots of things wouldn't be done."

Mrs. Della Reiser, sister-in-law of Mrs. Konert, gave testimony on behalf of defendants to the effect that on the 10th of February, 1932, she had a conversation with the deceased about Anna Konert in which the deceased said to her: "Do you need any help, let me know if you do; I am going to help Anna, I am giving her a thousand dollars." The testimony of this witness was corroborated by the testimony of her sons Harold Reiser and Elbert Reiser.

Defendants testified in their own behalf, over the objection and exception of plaintiff, denying categorically the testimony of plaintiff's witnesses wherein said witnesses declared defendants had admitted that they had "borrowed" the one thousand dollars in question from the deceased.

Plaintiff earnestly insists that the evidence failed to established a gift from the deceased to the defendants and that since it was admitted that they received the money from the deceased and had not repaid any of it, their defense of a gift should not have been submitted to the jury. In support of this contention, plaintiff argues that the execution of the note which was signed by the two defendants contradicts the very idea of a gift for the reason that if the deceased had intended the money as a gift at the time, no note would have been executed.

We are unable to agree with plaintiff's contention on this point.

The question of a gift *causa mortis* having been taken from the jury by the court by way of an instruction given on behalf of plaintiff, the paramount question to be determined in the case was whether the money admittedly delivered by the deceased to the defendants at the bank was intended by the deceased to be a gift or a loan.

The general rule as to what constitutes a gift *inter vivos* is stated in Corpus Juris as follows:

"What constitutes a gift *inter vivos*, and whether or not there is sufficient evidence to be submitted to the jury on the question of a gift *inter vivos*, is for the court to decide. Where the facts are known and unquestioned, and where but one conclusion can be drawn therefrom, the court may, as a matter of law, on the evidence adduced, declare that a gift has or has not been established. But where the question depends upon inferences to be drawn from a variety of facts and circumstances, in the consideration of which there is room for a substantial difference of opinion among intelligent, upright, and reasonable men, then the question should be submitted to the jury under appropriate instructions, although there is no conflict in the evidence." [28 C. J., p. 683, sec. 89.]

In Townsend v. Schaden, 275 Mo. 227, 243, 204 S. W. 1076, our Supreme Court quoted with approval from 12 R. C. L., pp. 973, 974, sec. 459, as follows:

"Declarations of the donor, especially if repeatedly made, are sufficient on which to establish a title by gift, and declarations of a donor that he had delivered a gift are sufficient evidence of its delivery, particularly where he had previously expressed his intention to give, and was under a moral obligation to make the gift."

In the case at bar there was evidence from which the jury might have found that the transaction between the deceased and the defendants at the bank was a loan, but there was also substantial evidence from which the jury could properly find that the deceased made a gift to Anna Konert by giving her and her husband the money in question. The cashier of the bank testified that when Ben Konert proffered to the deceased the note signed by himself and his wife, the deceased told him to keep it and that he would call for it later, but the testimony of the assistant cashier of the bank directly contradicted that of the cashier, and, if believed, constituted a basis for the jury to believe that the deceased did not regard the note as any part of the transaction and was making a gift instead of a loan. The assistant cashier was specifically asked whether or not when Ben Konert offered the deceased the note, the deceased said: "Keep it, I will call for it when I want it," and specifically answered that the deceased did not make that statement. When asked what the deceased did say about the note, the assistant cashier answer: "He said he didn't want it." We cannot ignore the testimony of the witnesses for defendants showing declarations made by the deceased at various periods in his lifetime indicating his high regard for defendant Anna Konert, nor can we overlook the testimony concerning declarations, made by the deceased, of his intention to give her a thousand dollars. It is true some of these declarations of the deceased, as testified to by defendants' witnesses, were remote but they appear to have been made from time to time down to within two days of the transaction at the bank when he actually delivered the thousand dollars to defendants. Such declarations as "I am going to give her a thousand dollars out of my estate," repeated two or three times by the deceased to witness William Christ, and his further declaration made to the same witness two days before the deceased disappeared, that the money was in the bank and that he was going to the bank and get that money and give it to Anna Konert, and also the declaration by the deceased: "I am going to help Anna. I am going to give her a thousand dollars," as testified to by other witnesses for defendants, were sufficient, if the jury believed such declarations were made, when taken with the other evidence of defendants, to warrant a finding that the transaction was a gift and not a loan.

In view of the evidence, we are of the opinion that the court could not have properly declared as a matter of law that there was no evi-

dence of a gift. It was clearly a case for the jury to decide. We, therefore, hold that the court did not commit error in refusing to direct a verdict for plaintiff. [Cramer v. May, 223 Mo. App. 57, 8 S. W. (2d) 110, 113; Townsend v. Schaden, 275 Mo. 227, 242, 204 S. W. 1076; Reynolds v. Hanson (Mo. App.), 191 S. W. 1030.]

Plaintiff complains of two instructions given on behalf of defendants. The first one told the jury that the deceased had a right to give to the defendant or defendants any amount of money or property which he saw fit, and that if the jury believed the deceased gave defendant or defendants a thousand dollars on or about the 12th of February, 1932, and that defendants accepted the same, then plaintiff would not be entitled to recover although the jury might believe that the defendants gave the deceased nothing in return. Plaintiff argues that this instruction permitted the jury to find for defendants on the theory of a gift even though the evidence showed that defendants did not accept the gift until after the death of the deceased.

The instruction is not as explicit in some respects as it might have been, but we do not believe the jury could have been misled by it, in view of the instructions which were given at the request of plaintiff. No element necessary to a finding against plaintiff and for defendants was omitted from the instruction and nothing was contained therein which could be said to be in conflict with plaintiff's instructions. Standing alone it might be said to be lacking in particularity, but we cannot say that the court committed reversible error in giving it.

The second instruction which plaintiff complains of told the jury that if they believed that on or about the 12th of February, 1932, the deceased gave defendants the sum of $1000 because of services, love and affection, or either services, love or affection between the deceased and Anna Konert, they should find for defendants. We do not believe the instruction is open to the objection made by plaintiff that it permitted the jury to find for defendants on the theory of payment of a pre-existing debt as well as that of a gift. Nothing whatsoever is said in the instruction about a pre-existing debt and nothing is said therein about the payment of any such debt; it merely required the jury to find as a prerequisite to a verdict for defendants that the deceased *gave* defendants the sum of one thousand dollars because of services, love and affection, or either services, love or affection between the deceased and Anna Konert.

We are unable to see wherein plaintiff could have been in any way prejudiced by either of the instructions mentioned, in view of the instructions that were given in his behalf by the court. One instruction given for plaintiff told the jury that if they believed the deceased loaned the money to the defendants, expecting them to repay him or his estate, they should find for plaintiff.

Another instruction for plaintiff told the jury that before they could find for defendants they must believe not only that the deceased actually intended the money as a voluntary and unconditional gift at the time it was delivered, but that the defendants then and there accepted it as such and further, that if defendants did not claim or consider the money as a gift until after they learned of the death of deceased, then such delivery of the money by the deceased was not a gift and the verdict should be for plaintiff.

Another of plaintiff's instructions told the jury that it was immaterial whether they believed that the deceased ought to have given defendants, or either of them, the thousand dollars in question and that the jury must find for plaintiff unless they believed the evidence was clear, explicit and convincing that the deceased actually intended at the time the money was delivered that it was to be a gift never to be repaid and that the defendants accepted it as such at that time.

Still another instruction given declared that the burden was on defendants to prove that the deceased in his lifetime delivered the money to them as a gift, and that before they could find for defendants they must believe that the gift had been established by clear, explicit and convincing evidence.

Another instruction for plaintiff told the jury that the mere fact that the deceased may have stated on numerous occasions that he was going to give Anna Konert a thousand dollars was not sufficient to establish a gift, and that before the jury could find for defendants they must believe that the deceased actually intended the money delivered to defendants on February 12, 1932, as a gift and that defendants then and there received it as such.

The final instruction for plaintiff told the jury that even though they might believe that the deceased intended at some future time to give Anna Konert some money or that he ought to have done so, yet the jury must find for plaintiff unless they believed that it had been shown by clear and convincing evidence that the deceased actually did give Anna Konert the money delivered on February 12, 1932, and that she accepted it as a gift at that time.

From the foregoing review of the instructions it is obvious that the jury were fully and fairly instructed as to the law of the case and we find no reversible error in the instructions complained of.

Plaintiff complains that the court committed error in refusing to permit him to prove the extent of the estate of the deceased and argues that such evidence should have been admitted for the reason that one who possesses only a little more than a thousand dollars would be less likely to give away a thousand dollars than one who had many many thousands.

The record shows that plaintiff was permitted to testify that his father, the deceased, had seven children and seven stepchildren and

824

that he deeded all his land to his son John on condition that John would pay the administrator five thousand dollars. Plaintiff was then asked what personal property the deceased had when he died. Counsel for defendants objected, saying he did not see how such evidence was competent. The court sustained the objection, whereupon counsel for plaintiff, after saving his exception to the ruling of the court, said:

"I now offer to prove the extent of William Schwalbert's estate at the time of his death and also on February 12, 1932, by this witness."

We would not be justified in holding that the court committed reversible error in this instance. The offer of proof made by plaintiff was too vague and indefinite to constitute ground for reversible error. When a party makes an offer of proof after an adverse ruling on the admission of evidence which is not clearly admissible, he should tell the court wherein and in what manner such evidence is competent and material and how it will, in his opinion, affect the questions in controversy. Failing to do this, he cannot complain of error.

When defendant Ben Konert was called to the stand as a witness, he gave his name and age in answer to questions, whereupon counsel for plaintiff made the following objection:

"I object to any testimony on the part of this witness, for the reason that he is one of the defendants and the administrator of the estate is a party and he is incompetent as a witness."

Counsel for defendants then said:

"I think, since the death of Judge Schwalbert, they have proved by certain witnesses that he made certain admissions and I think his testimony is admissible for the purpose of denying these admissions."

The trial judge said: "Yes, sir, I think so. The objection will be overruled." Counsel for plaintiff saved his exception to the ruling of the court and defendant Konert was permitted to testify without any further objections being made to his testimony. He testified that neither he nor Anna Konert, his wife, had admitted that they had "borrowed" the thousand dollars in question from the deceased. He was asked specifically and categorically whether or not he had made the admissions testified to by witnesses for plaintiff and denied that either he or his wife had made any such admissions.

Following the testimony of defendant Ben Konert, defendant Anna Konert took the stand and also denied having made the admissions testified to by witnesses for plaintiff. Her testimony was similar to that of her husband. Neither of the defendants was cross-examined by plaintiff's counsel.

Plaintiff contends that the court committed reversible error in permitting the two defendants thus to testify. The appointment of

plaintiff as administrator was made on April 11, 1932. Some of the conversations in question occurred on the night following the disappearance of the deceased, which occurred on February 12, 1932. Defendants were also permitted to testify concerning conversations occurring a day or two thereafter, as well as conversations on the day of the funeral of deceased, which took place sometime in the latter part of March, 1932. It, therefore, appears that defendants were permitted to testify concerning matters which took place prior to the administrator's appointment in the face of an objection wherein the court's attention was specifically called to the fact that an administrator was a party to the suit and that Ben Konert was one of the defendants and incompetent as a witness.

Section 1723, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 1723, p. 3994), upon which the objection of plaintiff was based, provides that no person shall be disqualified as a witness in a civil suit by reason of his interest in the event of the same as a party or otherwise, provided that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead or is shown by the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him. The statute further provides that no party to such suit whose right of action or defense is derived to him from one who is, or if living would be, subject to such disqualifications, shall be admitted to testify in his own favor, except as in the section is provided. The statute then provides as follows:

". . . and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator."

It will be observed that the language of the portion of the statute which we have set forth above is positive and unequivocal. It declares that where an administrator is a party, the other party "shall not be admitted to testify in his own favor."

It is true the statute further provides for circumstances under which the arbitrary and sweeping provision last above quoted shall not apply. The evidence in the case at bar, however, shows without dispute that defendants did not come within such exceptions for the reason that the contract in issue was not "made with a person . . . living and competent to testify," and furthermore, the "acts," or in other words, the conversations, did not occur "since . . . the appointment of the administrator," but occurred before such appointment.

A situation similar to the one in the case at bar was passed on by our Supreme Court in Kersey v. O'Day, 173 Mo. 560, 569, 570, 571, 73 S. W. 481. In that case it appeared that during the trial certain witnesses testified as to conversations had with the appellant therein. In rebuttal thereof, appellant sought to introduce testimony with respect to the conversations mentioned by the other witnesses. The trial court excluded such rebuttal testimony on the ground that it was not admissible because of the same statute now under discussion.

In the Kersey case the Supreme Court held that one who is prosecuting a claim against an administrator is not competent to contradict or explain conversations, concerning such claim, had by him with witnesses prior to the probate of the will or grant of letters; that while such witnesses may testify as to what the claimant said in such conversations, the statute excludes the claimant from testifying for the purpose of contradicting them. In the course of the opinion, in which all the judges concurred, Judge Fox said:

"Speaking for myself, it is difficult to see the reason of this strict rule. What difference does it make, whether the conversation was before or after the grant of letters of administration? The dead man is no party to the conversations. All the persons engaged in the conversations are living. Some of them are permitted to testify to the conversations; but the living party to the suit is excluded, because the opposing party to the suit is dead. If he had been living and was not present at the conversation, he would not be able to say anything about it. It strikes me as to these conversations, separate and independent from any transaction with the deceased, to permit the living witnesses to give their version of the conversation and then exclude the living party from giving his, is directly in conflict with the spirit of the statute, of placing all parties on an equal footing. The party to the suit must remain silent, and living witnesses can testify that he made certain statements and he is not permitted even to deny their statements. . . . However, this court has settled that question."

At this point in the opinion Judge Fox quoted with approval the following from the opinion of Judge BLACK in Leeper v. Taylor, 111 Mo. 312, 323, 19 S. W. 955:

"The statute excludes the living party, except as to acts done, or contracts made since the probate of the will or grant of the letters of administration. Here the conversations were had before letters were granted. The statute is plain enough, and should be followed."

In concluding the opinion in the Kersey case, Judge Fox, speaking for the court said that no error had been committed by the trial court in excluding the witnesses. [Kersey v. O'Day, supra.]

In Weiermueller v. Scullin, 203 Mo. 466, 472, 101 S. W. 1088, our

Supreme Court was again called upon to construe the same statute and it was there held that where an administrator is a party to the action the surviving party is disqualified to testify for any purpose until after the will is probated or the administrator is appointed. In that case the court said:

"This court has many times held that the statute does not exclude the living party from testifying where the evidence relates to transactions and conversations had with others to which the deceased was not a party and with which he had no connection and of which he had no knowledge. [Citing numerous cases.]"

At this point in the opinion in the Weiermueller case there is a discussion showing the distinction between the first part of the statute and the second part thereof, after which the court said:

"The failure of the courts to draw the distinction (though arbitrary as it is) between the rule which is applicable to the surviving party to the contract, where an administrator is a party to the action, and the rule above stated has added much to the confusion involved in the consideration of these questions. In the former the statute expressly disqualifies the surviving party as a witness for all purposes until the will is probated or the executor or administrator has been appointed, while under the latter there is no such disqualification.

"There is no reason for the rule except the cold mandate of the statute, and with that this court has nothing to do except to give it force and effect as we find it when presented to us." [Weiermueller v. Scullin, supra.]

In Davis v. Robb (Mo. App.), 10 S. W. (2d) 680, 681, 682, the Springfield Court of Appeals had before it a case in which at the time of the trial one of the original parties to the note in question therein and one who signed it later were offered as witnesses. On objection they were both held to be incompetent to testify because the other parties to the contract in issue and on trial were dead. The court, discussing the statute involved, said:

"In a general way the statute has been held to mean that the living party is not rendered incompetent in all respects by the death of the other party, but his incompetency is limited to those things about which the other party, if living, could testify. [Elsea v. Smith, 273 Mo. 396, 407, 202 S. W. 1071.]" [Davis v. Robb, supra.]

Proceeding with its opinion in the Davis case, the court held that the latter part of the statute, which provides "where an executor or administrator is a party," etc., is an arbitrary provision and said that part of the statute "is not open to construction, and the construction given the other parts of the statute does not apply to that provision."

At the conclusion of its opinion the court said:

"When an administrator is a party, the mouth of the adverse living party to the contract or cause of action on trial is closed as to all matters that occurred prior to the probate of the will or the appointment of the administrator, regardless of whether or not the other party, if living, could testify relative to the same matter. [Citing cases.] . . .

"Strange as it may seem, that arbitrary and unreasonable provision of the statute still remains as a part of our statutory law. In this case all the controverted matters occurred before the administrator, who was the party plaintiff in this case, was appointed. Mr. Wickizer and Effie E. Robb were, by reason of the statute, both incompetent to testify as to any controverted fact in this case, and the court rightly so held." [Davis v. Robb, supra.]

In the case at bar the court permitted the two defendants to testify concerning conversations which took place prior to the appointment of the administrator on April 11, 1932. We are of the opinion that the objection made by plaintiff to any testimony by defendant Ben Konert should have been sustained by the court. In view of the nature of the objection and the ruling of the court thereon, as to defendant Ben Konert, it was not necessary for plaintiff to repeat his objection as to Anna Konert when she was called as a witness, for she occupied the same status as her husband under the evidence which was, of course, known to the court. It was, therefore, proper for plaintiff to yield to the court's ruling on the question raised, after having saved his exception thereto.

The evidence in this case and the circumstances under which this question arises serve to emphasize the arbitrary and unreasonable character of the rule which the statute provides.

Here we have witnesses for plaintiff who have been permitted to testify to conversations showing admissions made by defendants to the effect that they had borrowed the money in question from the deceased. It was not claimed by any one that the deceased took part in such conversations. All the persons who took part therein were living at the time of the trial. Common fairness would, therefore, seem to require, as the trial court ruled, that defendants should be permitted to give their version thereof. Nevertheless, because of the arbitrary language of the statute, we must hold that the court erred in refusing to exclude defendants as witnesses merely because the conversations occurred before instead of after the appointment of the administrator. We are thus compelled by a statute which we are not at liberty to disregard, and which is open to but one construction, to render a decision which appears to be unreasonable and unjust.

The Legislature most certainly would not have enacted such a provision could it have foreseen the possibility of creating this unjust

inequality in the positions of parties before a trial court and a jury. Such inequality has been made clear in the opinions of our Supreme Court and of our Courts of Appeals and will without doubt be remedied when brought to the attention of the Legislature. In the meantime we can only say that our Supreme Court having declared itself to be bound to follow the rule laid down in the statute, it is our plain duty under the Constitution to follow that court's decision. We, therefore, hold that the trial court committed reversible error in refusing to exclude defendants as witnesses.

The judgment is reversed and the cause is remanded for another trial. *Hostetter, P. J.,* and *Becker, J.,* concur.