**Gordon A. GANTZ, Plaintiff-Respondent,**

**v.**

**AMERICAN NATIONAL BANK, Executor of the Estate of Willard F. Wilkinson, Deceased, Defendant-Appellant.**

**No. 24733.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

The plaintiff, Gordon A. Gantz, claims that deceased at the time of his death on April 14, 1965, was indebted to him in two categories: First, in the sum of $5,240.23, based upon a 7½ percent commission on the volume of business done by deceased from 1952 until the date of his death, pursuant to the terms of a written contract and, second, in the sum of $1440.76 for supplies furnished to deceased which were not paid for by him during his lifetime. There was a ten member jury verdict in favor of plaintiff for: "Recovery under contract, $5200. Recovery for account, $1400". Judgment accordingly was entered for plaintiff in the total amount of $6600. At the close of plaintiff's evidence, defendant filed a motion for directed verdict, which was overruled. The defendant offered no evidence.

We believe this story can best be told by presenting the evidence on plaintiff's part which was offered and received, and then subjecting such evidence to examination under the light of defendant's assignments of error and determining if the evidence was properly received. The assignments relate directly and entirely to alleged error in the reception of evidence on behalf of plaintiff.

The plaintiff at all times hereinafter mentioned was a tax consultant and accountant. His office was in St. Louis. In his work he used form books and record forms made up during the early years by Simplified Tax Records of New York and later by its successor Systematic Tax Records, Inc. He had representatives which he called Section Managers in various counties in Northwest Missouri, including DeKalb County. These Section Managers bought from or through plaintiff such forms which were produced by Systematic Tax Records, Inc. These representatives furnished tax services and consultations to a clientele in their county or area. Mr. Gantz was available for consultation as to any problem cases and he occasionally visited them at their offices. For supplying this tax service know-how, forms, supervision and advice, Mr. Gantz charged a commission of 7½ percent on the

Robert B. Paden, Maysville, for appellant.

Robison & Miller, Maysville, for respondent.

MAUGHMER, Commissioner.

This suit is based upon a claim filed by plaintiff against the estate of Willard F. Wilkinson, deceased. It was tried to a jury. The result was a verdict and judgment for plaintiff in the sum of $6600. The executor has appealed.

business done—at least that was his contract with Mr. Wilkinson, who from 1952, until his death maintained such an office at Stewartsville in DeKalb County, Missouri.

The plaintiff's evidence consisted of the following: Exhibits 1, 2, and 3, the oral testimony of seven witnesses and Exhibits 34, 35 and 36. Exhibit 1 is a six page written agreement, dated August 1, 1954, bearing the signatures of plaintiff and Mr. Wilkinson, under the provisions of which Wilkinson formally signed up as a Section Manager and agreed to pay to plaintiff 7½ percent of "amounts collected from customers". The contract also provided for supervision and consultation by plaintiff. The signature "Willard F. Wilkinson" was declared by plaintiff to be that of the testator Wilkinson. There was no objection to this testimony. Exhibit 2 is a ledger sheet which lists in total dollars the "Volume of Business" done by "Willard F. Wilkinson, Stewartsville, Missouri", from January 10, 1953 until April 14, 1965. This exhibit also contains a computation at 7½ percent on the volume of business reduced to dollars, and a third computation lists the balance (7½ percent) as $5240.23, the amount sued for under the contract. Exhibit 3 consists of four ledger sheets listing "Systems and Supplies" furnished during the same period to Mr. Wilkinson. In these three columns of figures which are designated debits, credits and balance, the balance due as reflected by the exhibit is $1440.76, the amount claimed for supplies furnished. Plaintiff, his wife Lee Gantz, and Charles Ellis; an accountant employed in plaintiff's St. Louis office, each testified without objection that these three exhibits were in the handwriting of plaintiff, were made "at or near" the time of the transaction therein referred to, were kept in plaintiff's St. Louis office and as "a part of the files and records of the office". Exhibits 4 to 33, additional office records, were identified but withdrawn and not received in evidence.

In addition, plaintiff testified that at the request of Mr. Harold G. Baughman, trust officer and Vice-President of the American National Bank, Executor, he furnished to Mr. Baughman a complete statement of his claim against the estate, that the same was true and correct and no part of it had been paid. Counsel for defendant allowed plaintiff (without objection under the Dead Man's Statute, Section 491.010, V.A.M.S.) to testify as to his occupation, acquaintance with deceased, the fact he represented and sold Systematic Tax Records to Section Managers, and that Mr. Baughman requested a statement of the account with Mr. Wilkinson, and he supplied same. Then defendant objected to a question as to the amount due under the account submitted. The objection was that plaintiff "was an incompetent witness". The objection was overruled. Then counsel for defendant cross-examined plaintiff as to Mr. Baughman's request and as to the contents of the account furnished. On cross-examination plaintiff was asked if he removed any records from Mr. Wilkinson's Stewartsville office after his death. He denied that he had done so. He was also asked if the entries on Exhibits 2 and 3 were made at or near the time of the alleged transactions.

Mr. Dean Curnitt testified that he had been associated with Mr. Wilkinson during the last ten years of his life and had worked with him in tax and accounting matters. He said he had seen plaintiff and Mr. Wilkinson working together on tax matters and expressed his opinion that the charges made by plaintiff for forms and supplies were fair and reasonable, and that Mr. Wilkinson had "acknowledged an indebtedness to Mr. Gantz".

Mr. Glen Rollett, former Stewartsville city clerk, shared offices with Mr. Wilkinson for a short period and said he "knew they (Gantz and Wilkinson) were together" on the bookkeeping and tax service work.

Myrtle Schleicher worked for a time in Mr. Wilkinson's office in Stewartsville. She said Wilkinson referred questions on tax work and auditing to Mr. Gantz—made telephone calls and wrote letters to him and sent income tax returns to his St. Louis office.

Mr. Harold G. Baughman, trust officer for the executor, testified that he "handled the details of the Wilkinson estate". He said he "suggested" that Mr. Gantz furnish him some statement or proof supporting the amount of the plaintiff's claim. Exhibits 34, 35 and 36 are copies of income tax returns prepared for Mr. Wilkinson and his estate by his executor and by the attorney for the estate after testator's death.

■ Appellant says it was error to receive "evidence pertaining to an account with Systematic Tax Records * * * as the named claimant was Gordon A. Gantz * * * and no admissible evidence was offered by plaintiff to show any authority of Gantz to prosecute any action on behalf of Systematic Tax Records, Inc." Appellant cites Section 351.385(2), V.A.M.S., giving corporations the right to sue, and Rule 52.01, V.A.M.R. providing that actions shall be prosecuted in the name of the real party in interest. We fully recognize this procedural requirement. However, under the evidence before us plaintiff appears to be the real party in interest. He bought or procured the forms and supplied or sold them to Mr. Wilkinson. The debt was due plaintiff and not to Systematic Tax Records, Inc.

In Andrae et al. v. Peck, 176 Mo.App. 61, 162 S.W. 1059, syl. 1, it was held that even where a corporation sold goods to defendant, yet the goods were billed in the name of plaintiff and the accruing indebtedness was treated as an indebtedness to plaintiff, plaintiff was the real party in interest.

Caldwell et al. v. Eubanks et al., 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621, cited by appellant is a suit brought by minority stockholders and is not in point. We deny this assignment.

■ The second point is that the court erred in requiring defendant to produce for plaintiff's inspection, all business records of deceased's business office, including all books of account, checks and correspondence concerning deceased's operation of the Stewartsville tax and auditing office and particularly with respect to plaintiff or Systematic Tax Records, Inc. Motions to produce for inspection are today liberally construed, give wide discretion to the trial judge, and inspection is permitted if deemed likely to lead to production of competent evidence. Section 510.030, V.A.M.S.; Rule 58.01, V.A.M.R.; Rule 57.01, V.A.M.R. and State ex rel. Boswell v. Curtis, Mo.App., 334 S.W.2d 757. None of those records were received in evidence. We are unable to conclude that defendant suffered prejudicial error as a result of such production. Appellant has frankly conceded that it has found no Missouri authority upholding its contention or even ruling this particular assignment. It is denied.

■ The final assignment is that "The court erred in admitting evidence of the plaintiff concerning transactions by and between plaintiff and the deceased defendant as such evidence is inadmissible under the so-called "Dead Man's Statute". Under this point defendant protests not only oral testimony by plaintiff but the reception into evidence of Exhibits 2 and 3, which were received under the Business Records Act, and Exhibit 1, the written contract signed by the parties. A witness, even though disqualified under the "Dead Man's Statute" may, nevertheless, testify as to the deceased's handwriting. Reidinger et al. v. Adams et al., Mo.Sup., 266 S.W.2d 610, 613; Stephenson v. Stephenson et al., 351 Mo. 8, 171 S.W.2d 565, 568.

Section 491.010, V.A.M.S. provides in part:

"No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility; *provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract*

*or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided, and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, * * *, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator; provided further, that in actions for the recovery of any sum or balance due on account, and when the matter at issue and on trial is proper matter of book account, the party living may be a witness in his own favor so far as to prove in whose handwriting his charges are, and when made and no farther".* (Italics ours).

Section 490.680, provides:

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

In our opinion Exhibit 1—defendant's signature to the contract—was identified and the exhibit was admissible. It is further our opinion that Exhibits 2 and 3 were admissible as Business Records.

As to the "Dead Man's Statute" we refer to Fellows v. Farmer, Mo.App., 379 S.W.2d 842, 849, 850. There the court said:

"This statute *is a qualifying* enactment *in* that it first removes the common-law disqualification of witnesses by reason of

interest, and it is a *disqualifying* enactment in that it then explicitly recognizes and imposes disqualification in certain instances.

\*   \*   \*   \*   \*   \*

"It is now well-settled that the *'trans-actions'* proviso does not impose a general disqualification and does not make the surviving party an incompetent witness for all purposes, but that such surviving party is disqualified 'only to the extent that his testimony might be subject to question by the other party if living' and in respect 'to transactions between the witness and the party then dead' [Elsea v. Smith, 273 Mo. 396, 408, 202 S.W. 1071, 1073(2)] and remains a competent witness in respect to transactions with others and as to matters 'with which [the deceased] had no connection, and of which he had no knowledge' ".

The court in Birdsong v. Estate of Ladwig, Mo.App., 314 S.W.2d 471, 477, made the following comment on the requirement of proper objection when the plaintiff was testifying and the other party (testator) was deceased:

"Since the witness is not incompetent under the dead man's statute for all purposes, objections must be specific and sufficiently exact to inform the court of the reason why the witness is disqualified in the particular instance. The court cannot be convicted of error in refusing to sustain general objections where the evidence is competent for any purpose".

The plaintiff, called as a witness in his own behalf, testified that he was a tax consultant and accountant and resided in St. Louis. He listed the schools he had attended, described working in Kansas City as an accountant, said he started his own business in 1947, and became a distributor of accounting and tax record forms produced by Systematic Tax Records, Inc. He testified that he first met the testator Wilkinson, many years ago, and that they were slightly related by marriage. He stated that Mr. Wilkinson returned to

Stewartsville (his earlier home) about 1952, built some fences and made other repairs for his aunt. The witness then started to repeat what Wilkinson told him, whereupon defendant objected to "what Mr. Wilkinson told him" and the objection was sustained. The defendant offered no other objection to plaintiff's testimony thus far. The examination continued:

"Q. (BY MR. MILLER) All right. Do you know of your own knowledge whether or not there was a change in arrangements, that is, on the part of Mr. Wilkinson, under which he did then in the latter part of 1952 begin work in connection with bookkeeping and auditing and preparing tax reports and tax services?

"A. Well, he did, yes. Under our instruction, yes.

"MR. PADEN: I want to object to the last part of the answer by the witness, under our instruction, and I ask that the jury be instructed to disregard that part of the answer".

The court sustained the objection as made and instructed the jury to disregard that part of the answer. We continue further with the examination of plaintiff.

"A. (The witness) Yes, I made numerous visits to different towns for checking up of tax records and accounts.

"Q. (BY MR. MILLER.) Without telling the names of who might be involved as having been with you, were these trips made in company with other people or persons?

"MR. PADEN: I object to that Your Honor as leading, and the second part is a flagrant attempt to get around the provisions of the statute. He must limit his questions to something that can reasonably be answered.

\*    \*    \*    \*    \*    \*

"(BY MR. MILLER) Was there— without describing the name of the place, was there a place or office to which you first came in this area from St. Louis,

in the area of Northwest Missouri before you made these trips with other persons to towns and cities and places in the Northwest Missouri territory in connection with your work? A. Yes, sir.

"MR. PADEN: I object to that on the grounds *it's immaterial and irrelevant and incompetent to any issue in this case.* (Italics added).

"THE COURT: Objection overruled.

"Q. (BY MR. MILLER) And where did you go? A. Stewartsville.

"Q. Stewartsville, Missouri? A. In Stewartsville, Missouri.

"Q. State whether or not without naming the person or names there was during that time being maintained in the city of Stewartsville, Missouri, any office by any person, and again not naming the person for the purpose of doing tax and auditing and bookkeeping services and selling bookkeeping supplies?

"MR. PADEN: I object to that on the grounds it's immaterial, irrelevant and incompetent to any issue in this cause.

"THE COURT: Well, . . .

"MR. MILLER: (Interrupting) This will be developed.

"THE COURT: Well, at this time I'm going to sustain this objection. You can develop that with other witnesses I believe Mr. Miller".

Mr. Gantz then identified Exhibits 1 through 33 and testified as to correspondence with Mr. Baughman of the executor bank. In our opinion the bar of the Dead Man's Statute was not invoked as to any of this evidence. Thereafter defendant proceeded to cross-examine plaintiff. We quote from that cross-examination:

"THE COURT: Go ahead.

"BY MR. PADEN: Mr. Gantz, it's your contention then that Mr. Wilkinson purchased this equipment as shown on this

list in your handwriting, from funds which you claim he owed you?

"A. Is that the finish of your question?

"Q. Yes? A. Well, what I was explaining was that the connection was the fact that Mr. Wilkinson asked permission to use funds due me to buy equipment, that that would speed up his work, and this was a list of the equipment that he did purchase.

"Q. Mr. Wilkinson purchased that equipment? A. Yes.

\* \* \* \* \* \*

"Q. Now Mr. Gantz, you have answered some questions concerning what are styled Plaintiff's Exhibits 2 and 3, Plaintiff's Exhibit 2 being one yellow ledger sheet and Plaintiff's Exhibit 3 being four pages written on both sides, and I want you to look at these pages once more Mr. Gantz and let me ask you the question. Were each and every entry on Plaintiff's Exhibits 2 and 3 entered on those sheets contemporaneously, meaning at or near the time, that the alleged transaction took place?

"A. Yes approximately, yes".

As stated by the court in Birdsong v. Estate of Ladwig, supra, objections must be specific and sufficient to inform the court that the incompetency of the evidence offered is being objected to under the Dead Man's Statute. We do not believe that any incompetent evidence was received over any such specific objection and therefore if any such incompetent evidence was received its incompetency was waived. The instant case is different from Schwalbert v. Konert et ux., 230 Mo.App. 811, 76 S.W.2d 445, 453, in which there was a clear-cut ruling at the outset that the witness was not disqualified and it was held the objection need not be repeated.

In Gillespie v. Ringhausen's Estate, Mo. App., 364 S.W.2d 633, the plaintiff offered to testify regarding a conversation between her and the testator. After an objection

that such testimony would be in contravention of the Dead Man's Statute, the court properly refused to hear it.

We believe that there was substantial, credible evidence offered upholding plaintiff's claim and that none of the assignments of error presented by defendant constitute reversible error.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.