## WEIERMUELLER, Appellant, v. SCULLIN.

**In Banc, April 29, 1907.**

1. **WITNESS: Party to Contract: Other Party Dead.** The statute (sec. 4652, R. S. 1899) is an enabling, not a disqualifying, act. It does not disqualify any person to testify because of his interest in the contract, whether the other be dead or not. It disqualifies the surviving party only when one of the original parties to the contract is dead, and it does that because the other party is dead. But where one of them has died, his assignee of the claim sued on may testify as to what occurred in regard to the contract after his death, and the other party may contradict that testimony and may give his own explanation of such post-mortem occurrences. [Overruling Curd v. Brown, 148 Mo. 95.]

2. ———: ———: ———: **Subsequent Transactions.** The statute does not exclude the living party from testifying where his evidence relates to transactions and conversations had with others to which the deceased was not a party and with which he had no connection. Where the suit is based on conversations had by decedent's assignee with defendant and admissions and promises by him, after decedent's death, defendant, the surviving party, may deny such admissions and explain the transaction, even though the claim grows out of a supposed debt due decedent and assigned to plaintiff.

3. ———: ———: ———: **Where Administrator is Party.** Where the administrator is a party to the action, the surviving party is disqualified to testify for any purpose until after the will is probated or the administrator is appointed; and much of the confusion attending the statute is due to a failure to observe this arbitrary distinction which it makes.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*John J. O'Connor* for appellant.

According to the evidence on both sides, the account sued upon represents money received by defendant from Samuel Weiermueller in 1889, and which he promised to repay to Weiermueller. Before payment Weiermueller assigned the debt to his wife and died. Thereafter, defendant made payments on the assigned debt to her, and refused to pay more. This suit is against the said debtor for what she claims to be still due on said debt. Under such circumstances, Weiermueller being dead, it was error to permit defendant to testify to the amount of the indebtedness, or permit him to testify at all over plaintiff's objections, based upon the ground that Weiermueller, with whom the defendant had the transaction, was dead. He was incompetent to testify in the case for any purpose whatever. Sec. 4652, R. S. 1899; Curd v. Brown, 148 Mo. 91; Wood v. Mathews, 73 Mo. 477; Leeper v. Taylor, 111 Mo. 323; Bagnell v. Bank, 76 Mo. App. 124. Nor could he testify in contradiction of plaintiff's statements. Curd v. Brown, 148 Mo. 91.

*Scullin & Chopin* for respondent.

Respondent was properly permitted to testify, as a matter of denial, to the real statements made to appellant concerning the transactions with her husband, after appellant had testified as to the purport of such conversations. Wade v. Hardy, 75 Mo. 394; Palmer v. Kellogg, 11 Gray 27; Cronan v. Cotting, 99 Mass. 334; Henry v. Buddecke, 81 Mo. App. 360; Kirton v. Bull, 168 Mo. 622.

### In Division One.

WOODSON, J.—This suit originated in the circuit court of the city of St. Louis, and is based upon an assigned account for the sum of $250, with divers credits thereon aggregating the sum of $162.75, and the balance alleged to be due with the interest to the date

of filing the suit amounted to the sum of $246.06.

The answer was a general denial.

The trial was before a jury.

The evidence for the appellant tended to show that she was the widow of Samuel Weiermueller, deceased, and that he assigned the account sued on to her on the 10th day of November, 1892, and died in the following December.

Appellant testified that after the death of her husband she went to see respondent regarding the account, and demanded payment, and he said: "Very well, I will pay you as soon as I am able." That was in 1896 or 1897. "I went to see him again, and he said: 'I will try and give you some on that account my next pay day.' I think it was about the third time [I went] that he gave me some money on account, which was $5," and that between May 6, 1897, and September 14, 1901, he paid her divers sums of money, aggregating $162.75, and that she kept a memoranda of all the payments and the dates thereof, which she stated in detail. She also testified that he never denied that he owed her the $250, and that she knew nothing about the loan of the money by her husband to respondent.

Over the objections of the appellant, the respondent testified as follows:

Q. What did she [the appellant] say to you when she came to you? A. The first time she came she said, "I understand that you have promised" — in the first place she said that. "she was very hard up," and said "she did not have any money and that she understood her husband to say that I had promised to pay him back some money he had paid me for those teams," and I told her that was right; that I had done that. She asked me how much it was and I told her it was $140, and I told her that I had promised him just before he died that I would do that, and that I would just as soon as I was able, and I did do it. I paid her from time to

time five dollars until I had it more than paid up — in fact I kept giving her money until she came to me with her husband, and then I told her that that settled it. I wouldn't pay her any more, that I had more than paid her what I had promised to pay her. I kept an account of the sums I paid her, which was about $160.

He further testified that she never presented any account to him and that he had never promised to pay her any more than $140, and that he had paid her over that amount because · her husband was a particular friend of his and had been in his employ thirteen years, and he wanted to help his widow along, and that when she married again he stopped the payments.

Appellant objected to respondent testifying in the case, because the other party to the contract in issue and on trial was dead, which objection was by the court overruled, and appellant duly excepted.

That was all the evidence in the case, and thereupon the court instructed the jury upon two theories of the case, presented by the evidence, to which action of the court appellant objected and excepted.

The jury found the issue for the respondent. Whereupon appellant filed her motion for a new trial, which was overruled, and she duly prosecuted her appeal to the St. Louis Court of Appeals, where the judgment of the circuit court was affirmed by a divided court, and the dissenting judge certified the cause to this court because, in his judgment, the opinion of that court was in conflict with the decisions of this court, namely: Kersey v. O'Day, 173 Mo. 560, and Curd v. Brown, 148 Mo. 82.

There is but one question presented by this record and that is, was the respondent a competent witness to testify to the conversations and transactions mentioned in his evidence?

It will be seen from reading the evidence that there was no evidence whatever that respondent was indebt-

ed to her husband, except her testimony, which tended to show that he at least tacitly admitted he owed the debt, and respondent's own testimony to the effect that he told her that he had promised her husband to pay him back *some money* the deceased had paid him for teams.

There has been some conflict between the decisions of this court upon the question here presented and some confusion has resulted in consequence thereof, in the admission and rejection of evidence. But it seems that the confusion has largely grown out of the fact that the nature and purpose of the statute governing such evidence has not at *all times* been kept in view.

Section 4652, Revised Statutes 1899, provides that, "No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility: Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in the favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided, and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator."

This statute is an enabling and not a disabling act. [Bates v. Forcht, 89 Mo. 121.]

The common law rejected the testimony of all persons whose pecuniary interest was directly involved in the matter in issue and on trial. [1 Greenleaf, Evid. (16 Ed.), secs. 327 and 328b.]

The many hardships imposed, and the miscarriage of justice was so frequent, under that rule of evidence, the Legislature was induced to abolish it, and to provide that no person should be disqualified from testifying as a witness on account of any interest he might have in the result of the suit. This provision of the section is absolute and not conditional. It means just what it says, that "no person shall be disqualified as a witness in *any civil suit* or proceeding at law or in equity by reason of his *interest*" in the result of the suit. The plain grammatical construction and clear meaning of the provision is, that in all civil causes interest does not disqualify anyone from testifying as a witness therein.

It is true, the same section of the statute in another provision provides that "in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify in his own favor, or in favor of any party to the action claiming under him."

But the disqualification pronounced by the provision of the section last quoted is not because of the *interest* of the witness offered, but because, in the language of the statute, the other party to the contract or cause of action in issue and on trial is *dead,* or is shown to be *insane.*

So it is seen, it is the *death* or *insanity* of one of the original parties to the contract or cause of action that closes the mouth of the other party to the con-

tract, and not his *interest* that disqualifies him as a witness.

The sole purpose of the proviso contained in said section was to silence by law one of the parties to a litigated obligation where death or insanity has silenced the other. [1 Whart., Evid., sec. 466; Meier v. Thieman, 90 Mo. 443.]

In the case at bar, all the testimony regarding the indebtedness of respondent to appellant's husband consisted solely of conversations which took place, according to her testimony, between herself and the respondent. Without those alleged admissions there was not a scintilla of evidence that respondent owed deceased anything. The trial court permitted respondent, over appellant's objection, to contradict her testimony regarding the admissions alleged to have been made by him to her regarding the alleged indebtedness, and permitted him to state what the real conversation was that took place between them. The appellant contends that the action of the court in allowing the respondent to testify was reversible error, because the other party to the contract in issue and on trial was dead, and that under said section 4652 he was not a competent witness for any purpose. All the conversations and transactions testified to by both the appellant and respondent took place between themselves after the death of Weiermueller, and both of them were still living at the time he testified.

This court has many times held that the statute does not exclude the living party from testifying where the evidence relates to transactions and conversations had with others to which the deceased was not a party and with which he had no connection and of which he had no knowledge. [Kirton v. Bull, 168 Mo. 622; Nugent v. Curran, 77 Mo. 323; Eyermann v. Piron, 151 Mo. 107; Banking House v. Rood, 132 Mo. 256; Orr v. Rode, 101 Mo. 387; Wade v. Hardy, 75 Mo. 394.]

The rule announced in these cases is peculiarily applicable to the facts of this case.

There are a few cases in this State which sustain the contention of the appellant, and base their conclusions upon the erroneous assumption that section 4652 leaves the living party to a contract or cause of action in issue and on trial, when the other party thereto is dead, just where the common law placed him, that is, incompetent on account of interest to testify for any purpose. The case of Curd v. Brown, 148 Mo. 95, so holds.

That is clearly an erroneous conception of the meaning of that section. No witness was disqualified by the common law from testifying because of the death or insanity of the other party to the contract or cause of action, but was disqualified solely on account of his *interest* in the result of the suit; and as that statute removed the *interest* qualification, he had the absolute right to testify to all transactions and contracts had with others, to which the deceased was not a party and had no knowledge. [Kirton v. Bull, 168 Mo. 622.]

Speaking of a similar statute, Judge SHERWOOD well said: "And being itself a remedial section, giving a testifying capacity where none existed before, and all these sections forming but one system, and being construed together as but one statute, they are to be construed liberally; are to receive an equitable interpretation; whereby the letter of the act or section will be sometimes enlarged or sometimes restrained so as the more effectually to meet the beneficial end in view, and prevent a failure of the remedy." [Ex parte Marmaduke, 91 Mo. l. c. 257.]

Judge BURGESS, in construing section 8922, Revised Statutes 1889, which is the same as section 4656, Revised Statutes 1899, quoted the language of Judge SHERWOOD with approval. [Cramer v. Hurt, 154 Mo. l. c. 118-119.]

The same liberal construction should be given to section 4652, because it is an enabling statute. [Bates v. Forcht, 89 Mo. 121.]

It should be borne in mind that respondent did not pretend to state what were the terms of the contract between himself and the deceased (nor did she for that matter) nor anything that transpired between them. He simply contradicted her evidence and stated what the conversation was that took place between them.

II. The failure of the courts to draw the distinction (though arbitrary as it is) between the rule which is applicable to the surviving party to the contract, where an administrator is a party to the action, and the rule above stated has added much to the confusion involved in the consideration of these questions. In the former the statute expressly disqualifies the surviving party as a witness for all purposes until the will is probated or the executor or administrator has been appointed, while under the latter there is no such disqualification.

In the language of Judge Fox in a recent case before this court, "Speaking for myself, it is difficult to see the reason for this strict rule. What difference does it make whether the conversation was before or after the grant of letters of administration?" [Kersey v. O'Day, 173 Mo. l. c. 570.]

There is no reason for the rule except the cold mandate of the statute, and with that this court has nothing to do except to give it force and effect as we find it when presented to us.

It follows from what has been said that the rule announced in the case of Curd v. Brown, 148 Mo. 82, is an erroneous statement of the law, and that case is hereby overruled.

The judgment of the St. Louis Court of Appeals is affirmed.

All concur, but believe the question involved is of sufficient importance to have the case transferred to the Court in Banc, and it is so ordered.

## In Banc.

PER CURIAM:—Upon a rehearing of this cause by the Court in Banc, the opinion of Woodson, J., in Division No. One, is adopted, and the judgment of the St. Louis Court of Appeals, affirming the judgment of the circuit court, is affirmed.