HERMINA K. DOYLE, ADMINISTRATRIX OF THE ESTATE OF JOHN M. DOYLE, DECEASED, RESPONDENT, v. E. M. DOYLE, APPELLANT.— 88 S. W. (2d) 387.

St. Louis Court of Appeals. Opinion filed December 3, 1935.

*Dearmont, Spradling & Dalton* for appellant.

*Kenrick Burrough* and *B. C. Hardesty* for respondent.

McCULLEN, J.—Hermina K. Doyle, administratrix, respondent in this cause, is the widow of John M. Doyle, who died intestate in Cape Girardeau County on March 29, 1932. As administratrix of his estate, she brought this suit against E. M. Doyle, appellant, and Eva A. Doyle, appellant's wife. Respondent's cause of action was based on two promissory notes of $1,000 each, executed by the said E. M. Doyle and Eva A. Doyle to J. M. Doyle, respondent's deceased husband. The suit was begun in the Cape Girardeau Court of Com-

mon Pleas, but was taken on change of venue to the Circuit Court of Cape Girardeau County, where a trial before the court and a jury resulted in a verdict and judgment in favor of plaintiff for $1680 on the two notes. The jury also found for respondent on certain promissory notes which defendant E. M. Doyle had separately set up as counterclaims against respondent. Defendant E. M. Doyle alone appeals.

The two notes sued on by plaintiff, hereinafter called respondent, are as follows: One for $1000, dated October 1, 1929, payable twelve months after date to J. M. Doyle, with interest from maturity at the rate of six per cent per annum, and signed by E. M. Doyle and Eva Doyle. This note shows on its face and on its back that certain payments thereon were made. The second note of $1000 is dated October 1, 1929, and is payable thirty-six months after date to J. M. Doyle, with interest from maturity at the rate of six per cent per annum, and is signed by E. M. Doyle and Eva A. Doyle.

The separate amended answer of E. M. Doyle, appellant, admitted the execution and delivery of the notes described in respondent's petition, together with the endorsements of credit for payments made thereon, but denied each and every other averment in the petition. By way of counterclaim in his amended answer, E. M. Doyle alleged certain payments made by him on the two notes for which J. M. Doyle, the deceased, had failed to give him credit, in addition to which he alleged also by way of counterclaims that on different dates J. M. Doyle, the deceased, executed and delivered to E. M. Doyle six promissory notes.

The first note of the six above mentioned was for $50, dated November 9, 1927, payable ninety days after date to E. M. Doyle, with interest from date at the rate of six per cent per annum; the second note was for $144.50, dated December 31, 1927, payable twelve months after date to E. M. Doyle, with interest from date at the rate of six per cent per annum; the third note was for $100, dated March 7, 1928, payable six months after date to E. M. Doyle, with interest from date at the rate of six per cent per annum; the fourth note was for $50, dated May 2, 1928, payable ninety days after date to E. M. Doyle, with interest from maturity at the rate of six per cent per annum; the fifth note was for $500, dated September 15, 1928, payable ninety days after date to Edward M. Doyle, with interest from maturity at eight per cent per annum; the sixth note was for $474, dated September 15, 1928, payable ninety days after date to Edward M. Doyle, with interest from maturity at the rate of eight per cent per annum.

E. M. Doyle prayed judgment against respondent for the several amounts of the six notes and for the sum of $355 to be allowed as a

credit for payments made on the two notes described in respondent's petition which had not been credited thereon.

The separate answer of Eva A. Doyle admitted the execution of the two notes described in respondent's petition, but averred that they had been fully paid and discharged.

The reply of respondent to the separate amended answer of E. M. Doyle denied failure to give credit for payments made on the notes described in respondent's petition, and admitted the execution and delivery of the six notes described in the counterclaims. For further reply, respondent averred in substance that said notes had been fully paid and discharged under and by virtue of a settlement between the said E. M. Doyle and his brother, the said J. M. Doyle, which provided for a division and a separation of all the real and personal property which they had acquired from their mother, Mrs. H. S. Doyle, who died September 27, 1925, leaving the said E. M. Doyle and J. M. Doyle as the only and equal beneficiaries of her will by which they each acquired an undivided one-half interest in all the realty and personalty whereof their mother died seized, consisting of the Doyle home and other realty adjacent thereto, all located at or near the northeast corner of Themis and Spanish Streets in the City and County of Cape Girardeau, with all the personalty located on said realty; that under said settlement and division, J. M. Doyle took as his own separate property certain of the household and kitchen furniture, and by deed which he and his wife (administratrix herein) duly executed and delivered, they relinquished to E. M. Doyle, and said Eva A. Doyle all interest in all the remaining personalty and all the realty acquired by J. M. Doyle from his mother, and delivered possession thereof to said E. M. Doyle and Eva A. Doyle, in consideration of which it was understood among other things that the said E. M. Doyle would cancel and discharge all the notes described in the counterclaims; that in addition thereto, E. M. Doyle and his wife, Eva A. Doyle, executed and delivered to said J. M. Doyle the two notes described in respondent's petition, being on the basis and understanding that the same represented that much money owed by E. M. Doyle and Eva A. Doyle over and above any and all debts owing from the said J. M. Doyle to the said E. M. Doyle, which debts included all the notes described in said counterclaims; that under and by said settlement the notes described in the counterclaims became paid and discharged and should be deemed satisfied and cancelled.

For reply to the separate answer of Eva A. Doyle, respondent denied that the notes described in the petition had been paid and discharged as alleged in said separate answer, but averred that said notes are still due and unpaid.

The verdict and judgment for the amount due on said notes are

not questioned by appellant. His appeal is from the verdict and judgment against him on the counterclaims on the six notes mentioned.

It appears from the record that John M. Doyle, respondent's deceased husband, and E. M. Doyle, appellant, were brothers. They were the sons and only heirs at law of Mrs. H. S. Doyle, and on her death became the owners of certain real estate, with improvements thereon, located in the City of Cape Girardeau. There is no dispute as to the location and description of the real estate.

The evidence showed that in August, 1929, E. M. Doyle, appellant, and Eva Doyle, his wife, purchased from John M. Doyle the deceased, his undivided one-half interest in the real estate referred to. The total consideration for the purchase of John M. Doyle's interest in said property was $6,000, to be paid to John M. Doyle as follows: $2500 to be paid in cash; $2000 in two notes, those sued on by respondent herein, and the remainder to be the surrender to John M. Doyle of the six notes executed by him to E. M. Doyle, which are described and set up in E. M. Doyle's separate defense herein as counterclaims.

At the beginning of the trial the parties entered into a stipulation as follows:

"It is also admitted that in August, 1929, E. M. Doyle and wife purchased from John M. Doyle his undivided half interest in this property for a consideration of six thousand dollars. It is also admitted that the consideration of six thousand dollars was paid to John M. Doyle as follows: $2500.00 in cash, $2000.00 in notes, which are the notes sued on in this case, and the surrender to John M. Doyle the notes executed by him to E. M. Doyle and which are described and sued on in the six counterclaims in this case."

It was shown in the evidence that the arrangement of August 21, 1929, wherein E. M. Doyle and Eva A. Doyle purchased John M. Doyle's interest in the real estate mentioned had not been carried out with respect to the surrender of the six notes set up in the counterclaims for the reason that said notes had been either lost or misplaced by E. M. Doyle.

It appears from the evidence adduced on behalf of the defense that appellant and his wife, Eva A. Doyle, borrowed $1500 from the Cape Girardeau Building & Loan Association for the purpose of paying to John M. Doyle the face value of the six notes because of their inability to surrender them to John M. Doyle.

The transaction whereby they borrowed the $1500 from the Building & Loan Association was handled in the following manner: On February 2, 1931, they borrowed $4000 from that Association for which they gave to it their note, secured by their deed of trust dated February 2, 1931, filed for record on that date. On February 4, 1931,

two days later, the deed of trust which they had executed on August 21, 1929, was satisfied. The evidence showed that the first loan of $2500 of August, 1929, was paid out of the second loan of $4000 February 2, 1931, leaving a balance of $1500 representing approximately the total amount of the six counterclaim notes with interest. Testimony for the defense was to the effect that this $1500 was to be paid to J. M. Doyle because of the inability of Mr. and Mrs. E. M. Doyle to surrender the six notes mentioned, but no check or voucher of any kind was produced to show that J. M. Doyle actually received such payment.

The real estate on which the deeds of trust of August 21, 1929, and February 2, 1931, were given, was the real estate originally owned by the mother of E. M. Doyle and J. M. Doyle.

Ethel Arnold, bookkeeper for the Electric Supply Co., of which E. M. Doyle was part owner, testified for the defense to conversations between E. M. Doyle and J. M. Doyle to the effect that J. M. Doyle had demanded of E. M. Doyle the surrender of the six notes in question, or the payment to him of the amount thereof in cash; that search had been made for the notes but they could not be found; that J. M. Doyle said that if the notes were ever found, Mr. and Mrs. E. M. Doyle would have a claim against him for the amount thereof; that the notes had not been found until the fall preceding the trial. She testified further that E. M. Doyle borrowed $1500 from the Cape Girardeau Building & Loan Association; that she saw the check at E. M. Doyle's house, and on that occasion E. M. Doyle and John Doyle left the house together with the check; that John Doyle was to be paid out of that check. However, in further reference to the check, the witness said: "I don't know what they did with it exactly." On cross-examination, referring to John M. Doyle, she said: "I don't know that he ever got the money." Later on this witness was recalled to the stand and gave testimony concerning a note for $900, dated February 6, 1931, payable to the order of John M. Doyle and signed by E. M. Doyle and Clinton Goyert. She testified that the $900 note represented money borrowed by the Electric Supply Co., from John M. Doyle; that the note refreshed her recollection concerning a conversation between John M. Doyle and E. M. Doyle with reference to the $1500, which E. M. Doyle had borrowed from the Cape Girardeau Building & Loan Association for the purpose of paying John M. Doyle the amount of the six notes which at that time E. M. Doyle was unable to find. She testified that a few days after John M. Doyle and E. M. Doyle had left the latter's home with the $1500 check, E. M. Doyle asked John M. Doyle if he had that $1500 which he had paid to him a few days before; that John M. Doyle told him he did have it, and E. M. Doyle said the Electric Supply Company would like to borrow $1000 from

him; that John M. Doyle said he couldn't let them have $1000 but would let them have $900, and did lend the Electric Supply Co., $900 and took the note above mentioned signed by E. M. Doyle and Clinton Goyert; that Clinton Goyert came in while the matter was being discussed and E. M. Doyle told Clinton Goyert in the presence of John M. Doyle that they could get the $900 from John M. Doyle out of the $1500 E. M. Doyle had paid to John M. Doyle a few days before.

Clinton Goyert, a former partner of E. M. Doyle in the Electric Supply Co., testified to the effect that he prepared the note for $900 dated February 6, 1931; that he was present at the time E. M. Doyle and J. M. Doyle were present; that John M. Doyle said he didn't need that money. The witness said he didn't remember John M. Doyle saying anything more.

E. M. Doyle testified to conversations he had with J. M. Doyle's widow, the administratrix herein, after the death of J. M. Doyle in which he told her that he had overpaid his brother, John M. Doyle, $1500 for debts that John owed him on the six notes for money loaned.

Respondent denied having such conversation with E. M. Doyle, and testified that shortly after the death of J. M. Doyle, appellant E. M. Doyle turned over to her the two notes sued on by her in this case; that he procured the notes from papers of her deceased husband which she had in her possession; that neither on that occasion nor upon any subsequent occasion when she had conversations with E. M. Doyle did he say anything about the six counterclaim notes herein or about any other debt owed by J. M. Doyle to him.

W. S. Hamilton of the City of St. Louis, an uncle of E. M. Doyle and J. M. Doyle, testified that after the funeral of John M. Doyle he was present with E. M. Doyle and respondent when the box containing J. M. Doyle's papers was opened; that E. M. Doyle picked out the two notes which respondent is suing on herein, and that E. M. Doyle did not say anything about his brother owing him, and there was nothing said about John M. Doyle's liabilities.

Kenrick Burrough, respondent's attorney herein, testified that after he had been consulted by respondent with a view of opening the administration of the estate of respondent's deceased husband, he discussed with E. M. Doyle in the spring of 1933 the question of the two notes sued on herein by respondent, and also discussed with him the question of claims or debts against the estate of J. M. Doyle; that he asked E. M. Doyle whether he knew of any debts or obligations of his late brother, Mr. John Doyle, at the time of his death, and that E. M. Doyle said that he did not; that thereafter E. M. Doyle came to his office and that they went over the papers, looked over the two $1000 notes again, and that the question of debts

or claims against the estate of John M. Doyle again came up and that he asked E. M. Doyle if he had any or had learned of any debts or claims which Mr. John Doyle owed at the time of his death, and that appellant said he did not; that he had not learned of any.

Respondent introduced in evidence an abandoned answer which had been filed in this cause by appellant E. M. Doyle. The abandoned answer contained a number of counterclaims based upon various matters not necessary to mention here, but contained no mention whatsoever of the six notes set up in his amended answer upon which the case went to trial.

Testimony on behalf of respondent was given by Carl Bauerle, Secretary of the Cape Girardeau Building & Loan Association, showing that the check of that association in favor of E. M. and Eva Doyle, dated February 3, 1931, was for the sum of $1666.98; that the amount mentioned was the net proceeds of the loan of $4000 made by that association to E. M. Doyle and Eva A. Doyle of February 2, 1931; that out of the $4000 mentioned, the Building & Loan Association paid off the liens and claims against the property, the expense of making said loan, and paid off the prior loan of $2500 on which there was a remainder due of $2276.98, the $2500 prior loan having been reduced by $166.98 by earnings on the stock of the Building & Loan Association.

The proceeds of the $4000 loan from the Building & Loan Association to appellant E. M. Doyle and his wife were traced by the testimony of the cashier of the bank where E. M. Doyle did his banking business, and showed that no charge was made after February 5, 1931, against said account for any amount approximating $1500, although the account did show that on February 7, 1931, $900 was checked out, and on February 9th and February 11, 1931, there was checked out of the account respectively $100 and $1000, leaving a balance of $56.66 in the account at the close of February 11, 1931.

During the trial appellant offered Mrs. E. M. Doyle (Eva A. Doyle.) as a witness to show that the six counterclaim notes had been lost or misplaced; that she was present when they were located; that she had heard John M. Doyle, the deceased, demand of appellant the surrender of said notes and if he was unable to surrender them, to pay the face value thereof together with interest, and that appellant and herself had borrowed from the Cape Girardeau Building & Loan Association a sufficient amount of money to make such payment.

On respondent's objection, the court refused to permit her to testify. Appellant saved exceptions to the ruling of the court and now assigns that ruling as error. Respondent's objection was that under section 1723, Revised Statutes Missouri 1929 (Mo. Stat. Anno., sec. 1723, p. 3994), the witness was incompetent to testify on two grounds: First, because

"This is an action where the administratrix is a party and no other party to the case shall be admitted to testify unless the instrument in issue was made with a person living and competent to testify, or unless the question relates to a matter since the appointment of the administratrix."

The second ground, based upon the same statute, was:

"Because one of the original parties to the contract or cause of action is dead, such deceased party being John M. Doyle whose estate is a party in this case."

The same objection was made by respondent when appellant E. M. Doyle was offered as a witness for the defense. The court sustained the objection and refused to permit him to testify. This ruling also is assigned as error.

Appellant urges that the execution and contents of the notes described in his counterclaims were admitted and that, therefore, he was a competent witness to prove their loss or misplacement, and that the court committed error in refusing to permit him to testify. He also insists that Eva A. Doyle was not a party to the notes sued on in the counterclaims, and that he had a right to show by her the loss of the notes in question and also the conversations between John M. Doyle and E. M. Doyle with reference to the surrender thereof.

A number of cases are cited by appellant in support of these points. We have read the cases thus cited and find nothing therein which would warrant us in holding that the court committed reversible error in refusing to permit the appellant or his wife to testify under the circumstances in the record of this case.

Section 1723, Revised Statutes Missouri 1929 (Mo. Stat. Anno., sec. 1723, p. 3994), provides among other things that:

". . . and where an executor or administrator is a party, *the other party shall not be admitted to testify in his own favor* unless the contract in issue was originally made with a person who is living and competent to testify *except as to such acts and contracts as have been done or made since the probate of the will or the appointment of an administrator.*" (Emphasis ours.)

Appellant, under the evidence herein, was clearly within the above provision of the statute and therefore incompetent to testify as a witness. The suit is one in which an administratrix is a party. The counterclaim notes on which appellant sought to recover were alleged and admitted to have been made by J. M. Doyle the deceased husband of the administratrix who was plaintiff in the cause. J. M. Doyle, the deceased, was the other party to said notes. E. M. Doyle, appellant, is the "surviving" party thereto and a party defendant to the suit.

In Weiermueller v. Scullin, 203 Mo. 466, 101 S. W. 1088, our Su-

preme Court definitely settled this question when it held that *where an administrator is a party* to the action, the *surviving party* is *disqualified to testify for any purpose* until after the will is probated or the administrator is appointed. In that case the Supreme Court carefully reviewed the statute now under consideration and held that it is an enabling and not a disabling act. In that case the court in its opinion showed that under the common law, testimony of all persons whose pecuniary interest was directly involved in the matter in issue and on trial was rejected; that a miscarriage of justice was so frequent under that rule of evidence that the Legislature was induced to abolish it and to provide that no person should be disqualified to testify as a witness because of any interest he might have in the result of the suit.

In that portion of the statute, referred to as the proviso, the following language appears:

"Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him  . . ." [Section 1723, Revised Statutes Missouri 1929 (Mo. Stat. Anno., sec. 1723, p. 3994).]

Referring to the above part of the statute, the Supreme Court, in the Weiermueller case, supra, said:

"The sole provision of the proviso contained in said section was to silence by law one of the parties to a litigated obligation where death or insanity has silenced the other. . . . This court has many times held that the statute does not exclude the living party from testifying where the evidence relates to transactions and conversations had with others to which the deceased was not a party and with which he had no connection and of which he had no knowledge." [Weiermueller v. Scullin, supra, l. c. 472.]

However, with respect to that portion of the statute wherein it is provided: "And where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor," etc., which we have set out more fully above, the Supreme Court said:

"The statute expressly disqualifies the *surviving party* as a witness *for all purposes* until the will is probated or the executor or administrator has been appointed. . . ." [Weiermueller v. Scullin, supra, l. c. 474.] (Emphasis ours.)

The Supreme Court took notice in the Weiermueller case of the arbitrary character of the rule provided for in the part of the statute referred to, and said that it was difficult to see the reason for this strict rule, but concluded that part of its opinion in the following language:

"There is no reason for the rule except the cold mandate of the statute, and with that this court has nothing to do except to give it force and effect as we find it when presented to us." [Weiermueller v. Scullin, supra, l. c. 474.]

The same rule applies to Eva A. Doyle. She was a party defendant in the cause and was also a party to the notes upon which respondent's cause of action was based. The fact that she was not a party to the counterclaim notes does not make the rule inapplicable to her. The matters sought to be proved by her all related to a time prior to February 25, 1933, the date of the appointment of the administratrix herein. The conversations sought to be proved by her were those of John M. Doyle, a party who was dead, and concerned the very contract in issue and on trial to which he was alleged and admitted to have been a party, because the surrender of the counterclaim notes was intended to extinguish the debts therein represented and a judgment for appellant thereon would, of course, directly affect respondent's recovery on the two notes executed by appellant and his wife. The surrender of the counterclaim notes was a part of the understanding or agreement of settlement which gave rise to the notes sued on by respondent herein.

As to the loss or misplacement of the six counterclaim notes, there was an abundance of evidence for appellant that they were so lost or misplaced, and this was not denied by respondent. Testimony by appellant and his wife with respect to the loss or misplacement of the counterclaim notes would have been merely cumulative and would have referred to facts concerning which there was no dispute at the trial.

We are of the opinion that both appellant and his wife were clearly disqualified as witnesses under the statute, and we hold that the court's rulings on respondent's objections were correct. [Section 1723, Revised Statutes Missouri 1929 (Mo. Stat. Anno., sec. 1723, p. 3994); Weiermueller v. Scullin, supra; Kneuven v. Berliner's Estate (Mo. App.), 54 S. W. (2d) 494, 499, 500; Schwalbert v. Konert (Mo. App.), 76 S. W. (2d) 445, 451, 452, 453.]

Appellant next complains that the court erred in giving respondent's instruction No. 4 and in refusing instruction No. 7 which he requested.

Instruction No. 4, given for respondent, told the jury that:

"It stands admitted by defendants in this case that plaintiff's deceased husband, John M. Doyle, paid all the notes sued on in the counterclaims herein by a conveyance of certain real estate in August, 1929, and that said notes were not cancelled and surrendered back to said John M. Doyle at that time only because they were lost, and could not be found, and that under said admissions, the said notes sued on in said counterclaims became discharged, and the

jury should find for the plaintiff and against defendant, E. M. Doyle, on all said counterclaims unless he, E. M. Doyle, should overcome said admissions by proof to the jury by a preponderance of all the evidence in this case that subsequent to such agreement defendant E. M. Doyle paid to John M. Doyle $1500 in cash in lieu of the notes sued on in the counterclaims herein, . . ."

Instruction No. 7 offered by appellant E. M. Doyle, which the court refused to give, told the jury that:

"Plaintiff admits that John M. Doyle executed and delivered the six notes described and set out in the counterclaim, but alleges that said notes have been paid, and the jury is instructed that the burden of showing and establishing the payment of said notes is on the plaintiff, Hermina Doyle, administratrix, and unless she has established the proof of said payment by a preponderance or the greater weight of the evidence, then she is not entitled to recover and your verdict should be for the defendants, E. M. Doyle and Eva A. Doyle, for the amount due on said notes, together with interest and attorney's fee."

Appellant urges that the giving of instruction No. 4 and the refusal of instruction No. 7 erroneously placed upon him the burden of overcoming admissions with respect to the payment of the counterclaim notes by assuming that the parties to the suit had admitted that John M. Doyle had paid the counterclaim notes by a conveyance to E. M. Doyle of J. M. Doyle's undivided one-half interest in the realty. Appellant argues that the facts in evidence disclose that the notes were to be surrendered to the maker and on failure to return the same, their equivalent was to be paid in cash.

It is argued by appellant that the law is well settled that if notes are not paid in money according to their tenor but are to be paid otherwise, it must be by agreement of the debtor to give and the creditor to receive something else in satisfaction of the debt, and that it must have been actually given and received; that E. M. Doyle was the payee of the notes; that they were in his possession and that the presumption, therefore, was that they had not been paid; that instruction No. 4 for respondent ignored these principles of law and shifted the burden on appellant.

We are unable to agree with appellant's contention in this respect. The evidence all showed that the counterclaim notes were lost or misplaced. This evidence was all presented by the defense and was given as a reason why the six notes had not been surrendered to J. M. Doyle. At the beginning of the trial it was stipulated and admitted by the parties that the counterclaim notes were to be surrendered to J. M. Doyle as a part of the consideration for J. M. Doyle's transfer to E. M. Doyle and Eva A. Doyle of J. M. Doyle's undivided half interest in the realty which the brothers had received from their

mother. Under these facts which were not disputed, but on the contrary were admitted by all parties, there could be no presumption arising from E. M. Doyle's possession of said notes that they were paid because his own admission that they were lost and had not been delivered to J. M. Doyle in accordance with the settlement completely explained his possession thereof.

There can be no doubt whatever that it was the intention of E. M. Doyle and J. M. Doyle that the debts of J. M. Doyle to E. M. Doyle, represented by the notes in the counterclaims, were extinguished by E. M. Doyle's agreement to surrender said notes to J. M. Doyle as part payment for J. M. Doyle's undivided half interest in the realty mentioned because the stipulation of the parties at the beginning of the trial admitted these facts. If, as E. M. Doyle contended, he had paid to J. M. Doyle the amount of the notes in cash, thereby changing the agreement of settlement between himself and J. M. Doyle the burden was on E. M. Doyle to prove the same because he admitted at the beginning of the trial, through the stipulation filed, that said notes were to be surrendered to J. M. Doyle. Not only did appellant by his stipulation at the trial admit that the surrender to J. M. Doyle of the counterclaim notes was a part of the consideration moving to John M. Doyle for his undivided half interest in the realty, but in his brief appellant says, referring to the settlement between the two brothers: ''The balance of the purchase price was the surrender to J. M. Doyle by E. M. Doyle of the notes sued on in appellant's counterclaim amounting to approximately $1500.00.''

The evidence, therefore, showed that the debts represented by the counterclaim notes, even though the notes themselves had not been actually surrendered to John M. Doyle, were extinguished and the burden was on appellant to present evidence to establish the payment in cash by which he claimed the counterclaim notes had been revived and by which they had become live obligations again.

Appellant had the affirmative of the issue the counterclaim notes and there was no error in the court's action on the instructions mentioned. [Stofer v. Dunham et al. (Mo. App.), 208 S. W. 641; Berger v. Storage & Commission Co., 136 Mo. App. 36, 42, 116 S. W. 444.]

Other points made by appellant are not discussed in the argument, and we, therefore, consider them as having been abandoned. Finding no reversible error in the record, the judgment is affirmed. *Hostetter, P. J.,* and *Becker, J.,* concur.